**Bertrand G. BERUBE, Petitioner,**

v.

**GENERAL SERVICES ADMINISTRATION, Respondent.**

**Appeal No. 86–1584.**

United States Court of Appeals, Federal Circuit.

June 2, 1987.

Michael L. Spekter, Washington, D.C., argued, for petitioner. With him on the

brief was Thomas M. Devine, of Government Accountability Project, Washington, D.C.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With him on the brief were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Mary C. Ramsey, Office of General Counsel, General Services Admin., of counsel.

Before SMITH, NEWMAN, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Petitioner, Bertrand G. Berube (Berube), seeks reversal of the opinion and order of the Merit Systems Protection Board (Board), 30 M.S.P.R. 581 (1986), sustaining his removal from a Senior Executive Service (SES) position in the General Services Administration (GSA). We vacate and remand.

## BACKGROUND

Berube was a member of the SES employed by GSA as Director of the National Capital Region of the General Services Administration, Washington, D.C. On August 26, 1983, GSA's administrator proposed Berube's removal from the federal service for misconduct, malfeasance, and neglect of duty. Berube's removal notice contained five charges. Charges one, three, and four alleged that specified performance-related conduct amounted to misconduct, malfeasance, and neglect of duty. Charges two and five recounted two incidents in which Berube threatened to disclose to the media information about what he believed to be agency mismanagement, unless the administrator made concessions relating to Berube's job status. The charges are set forth in an appendix to this opinion. Based on these charges, the agency removed Berube effective September 30, 1983.

Berube timely appealed his removal to the Board. In a seventy-four page initial decision, the presiding official carefully analyzed the evidence, concluded that the agency had proved each of the five charges by a preponderance of the evidence, concluded that Berube had not proved his affirmative defense that he was removed based upon protected whistleblowing activity, and affirmed the agency's decision. In its opinion and order, a majority of the full Board sustained Berube's removal based on charges three and four.

## ISSUES

1. Did the Board commit legal error by concluding that an agency may remove an employee in the SES under 5 U.S.C. § 7543 (1982) for conduct that is related to his job performance?

2. Is the Board's determination that the agency would have removed Berube absent the conduct described in charge two unsupported by substantial evidence?

3. Has the Board applied the proper legal standard to determine whether the agency's decision to remove Berube under 5 U.S.C. § 7543 was supported by a preponderance of the evidence?

## OPINION

We review the Board's decision under the authority of 5 U.S.C. § 7703(c) (1982), which provides that the agency's action may not be sustained if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *See Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984).

### I.

This case presents for the first time the question whether Chapter 35 of Title 5 of the United States Code provides the exclusive procedure for performance based actions by an agency against a member of the SES, or whether the agency may, under appropriate circumstances, elect to proceed under Chapter 75. The Civil Service Reform Act (CSRA), as amended, contains multiple provisions governing adverse action by an agency against an employee in

the SES. Section 3592 provides, with certain exceptions not relevant here, for removal of a career appointee from the SES to a civil service position outside the SES "at any time for less than fully successful executive performance as determined under subchapter II of Chapter 43 of this Title." 5 U.S.C. § 3592(a)(2) (1982) (Subchapter II of Chapter 43, 5 U.S.C. §§ 4311–4315, describes the performance appraisal systems for the SES.). An agency may also remove an SES employee under section 7543 for: "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." In contrast to removal under section 3592, which is removal from the SES to a civil service position, removal under section 7543 means removal from the civil service.

■ Berube argues that the statutory scheme of the CSRA, particularly Chapters 35 and 75, demonstrates that removal under Chapter 35 is the exclusive procedure for performance based actions against SES employees. Berube bases his argument, to a large extent, on his reading of this court's opinion in *Lovshin v. Department of the Navy,* 767 F.2d 826 (1985), *cert. denied,* — U.S. —, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986). In *Lovshin,* the court addressed a similar question: whether, in cases not involving SES employees, Chapter 43 was the exclusive procedure for performance based actions by an agency.

The Department of the Navy removed Lovshin from his position as an engineer for poor performance effective November 30, 1981. The MSPB sustained the agency action as complying with Chapter 75. In *Gende v. Department of Justice,* 23 M.S. P.R. 604 (1984), however, the MSPB held that Chapter 43 was the exclusive procedure for performance based actions effective after October 1, 1981, and that Chapter 75, with several exceptions, was no longer available after that date for effecting such actions. When Lovshin appealed to the Court of Appeals for the Federal Circuit, the MSPB intervened and argued that the court should remand the case because the MSPB had failed to apply the rule announced in *Gende.* After a thorough analysis of the history and provisions of the CSRA, this court in *Lovshin* concluded that Chapter 43 and Chapter 75 were, in fact, alternative methods of removing an employee for "performance" reasons, albeit with a higher standard of proof under Chapter 75. In its analysis, the court cited sections 7541–7543 as an example of Congress' ability to limit the coverage of Chapter 75 removal procedures when it desired to do so.

When it amended section 7543, Congress limited the bases for removal under the section. Prior to the amendment, an agency could remove an employee under section 7543 for "such cause as [would] promote the efficiency of the service." After the amendment, an agency may remove an employee "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." Berube argues that the amendment effectively eliminates from the scope of employee acts covered by section 7543 *all* performance related acts that could serve as a basis for removal.

Berube's argument simply goes too far. It seems obvious that an employee's actions or inaction related to his job performance may or may not amount to misconduct, neglect of duty, or malfeasance depending on the circumstances. When they do not, the agency must proceed under section 3592. When they do, the agency may proceed under section 7543. Even the MSPB, when it, in *Gende,* found an implied limitation on the grounds for removal under section 7513, did not go so far as to say that a performance based action could *never* serve as the basis for removal under Chapter 75. Rather, it recognized that an agency could bring such cases under Chapter 75 when the employee's conduct amounted to misconduct (which included misconduct on the job) or insubordination. *Lovshin,* 767 F.2d at 839. Nothing in the plain language of the statutes suggests that Congress intended to restrict the meaning of "misconduct, neglect of duty, [or] malfeasance" by excluding from the ordinary meaning of those terms acts relat-

ed to an employee's job performance. Such a limitation is absurd, for it would sanction the most egregious misconduct by making the maximum allowable penalty removal from the SES to the civil service. While Congress intended such a limitation of penalty for simple inability to perform, it certainly did not so limit an agency's choice of penalties in response to the conduct described in section 7543. The statutes do not insulate an employee from the penalties provided in Chapter 75 because his acts of misconduct, neglect of duty, or malfeasance occurred in the context of performing his job. Thus, we hold that the Board did not err in concluding that GSA could remove Berube under Chapter 75 for conduct that was related to his job performance because the conduct rose to the level of misconduct, neglect of duty or malfeasance.

## II.

The whistleblowing defense issue arrives before the court in an interesting posture. In the proceedings below, the presiding official sustained each of the five charges against Berube. On appeal, the full Board sustained charges three and four. It concluded that the agency had mischaracterized the conduct described in charge one as misconduct or neglect of duty. It also concluded that the agency could not remove Berube on the basis of charges two or five. Charges two and five involve the threatened disclosure of information, the disclosure of which Berube alleged was protected under 5 U.S.C. § 2302(b)(8) (1982). The Board concluded that the threatened disclosure described in charge two was a protected disclosure, but that the threatened disclosure described in charge five was not. Nevertheless, the Board concluded that the agency could not take adverse action based upon the threatened disclosure described in charge five because it was made in the context of the settlement of an agency appeal. Because the Board concluded that charge two encompassed protected activity, it went on to consider, pursuant to the test prescribed in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 285–86, 97 S.Ct. 568, 575, 50

L.Ed.2d 471 (1977), whether the whistleblowing activity described in charge two was a substantial factor in the agency's decision to remove Berube, and whether he would have been removed if he had not engaged in the protected activity. The Board concluded that the agency would have removed Berube absent the threatened disclosure. Dissenting to the full Board opinion, Board member Johnson opined that the threatened disclosure described in charge five was also protected activity. She would have concluded that the agency did not prove by a preponderance of the evidence that it would have removed Berube absent the protected activity described in charges two and five.

On appeal to this court, Berube argues that the Board's conclusion that the agency proved by a preponderance of the evidence that it would have removed him even if it had not considered charge two is not supported by substantial evidence. He does not appear to argue that the Board erred in concluding that the activity described in charge five was not protected under section 2302(b)(8).

We must decide whether substantial evidence supports the Board's determination that the agency proved by a preponderance of the evidence that it would have removed Berube in the absence of charge two. The Board's analysis of the affirmative defense issue of whistleblowing is persuasive. We think that the record reveals substantial evidence to support the Board's determination. We hold that Berube is not entitled to reversal on this issue. Our conclusion does not end the inquiry, for regardless of whether Berube has proved his affirmative defense we must also decide whether the Board applied the proper legal standard to determine that the agency's decision to remove Berube under section 7543 was supported by a preponderance of the evidence.

## III.

■ In addition to resolving the issues already addressed, it was also the Board's responsibility to determine whether the agency's *decision* was supported by a pre-

ponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B) (1982). The Board may not discharge that responsibility merely by finding that the individual charges were proved by a preponderance of the evidence, nor by determining that the agency "could have" brought a removal action under section 7543 based upon the sustained charges. We hold that the Board must determine whether the agency has proved by a preponderance of the evidence that it "would have" brought the action under section 7543 based upon the sustained charges.

When a non-SES employee is removed under section 7513 for misconduct, the Board considers whether the agency has proved the charges. It next considers whether the penalty of removal is appropriate in the sense that the penalty is not arbitrary and capricious or an abuse of discretion and that the penalty is reasonably calculated to promote the efficiency of the service. *Douglas v. Veterans Admin.*, 5 MSPB 313, 326–30, 5 M.S.P.R. 280 (1981). As an aid to determining the appropriateness of the penalty selected by the agency, the Board considers the relevant factors set forth in *Douglas.* If, in light of the relevant factors, the Board determines that the sustained charges warrant the penalty imposed, the Board concludes that the agency's decision with respect to both charges and penalty is supported by a preponderance of the evidence as required by 5 U.S.C. § 7701(c)(1)(B). *See Kline v. Department of Transp., FAA,* 808 F.2d 43 (Fed.Cir.1986).

Determining that an agency's decision to remove or suspend an SES employee under section 7543 is supported by a preponderance of the evidence requires a different procedure. Unlike section 7513, section 7543 no longer contains the requirement that the agency may take adverse action "only for such cause as will promote the efficiency of the service." Congress apparently substituted a misconduct standard for the efficiency of the service standard with the intent of restricting the availability of removal under section 7543 in the event of a reduction-in-force affecting SES employees. H.R.Rep. No. 208, 97th Cong., 1st Sess. 914–16, *reprinted in* 1981 U.S. Code Cong. and Admin. News 1010, 1276–78. In *Lisiecki v. Merit Systems Protection Board,* 769 F.2d 1558 (Fed.Cir.1985) this court compared the Board's procedures for reviewing removal actions against non-SES employees taken under Chapter 43 and Chapter 75. The court held that in Chapter 43 cases the Board lacked the authority to mitigate the penalty selected by the agency. This holding was based in part on the "principal [factor]" of "the historic relationship of the penalty to the efficiency of the service standard in chapter 75 actions." *Id.* at 1566. Because section 7543 does not incorporate an efficiency of the service standard, the Board may not mitigate the penalty selected by the agency in adverse actions under this section. There is no possibility of the Board reducing the penalty if some of the charges against the employee are not sustained. Consequently, if only some of the charges against the employee are sustained, it may be that although the sustained charges could have been the basis for removal under section 7543, the agency would not have sought removal under section 7543 based on those charges alone. In such cases, the decision to remove the employee under section 7543 would not be supported by a preponderance of the evidence as required by 5 U.S.C. § 7701 (c)(1)(B).

In Berube's case, the Board determined that the agency proved by a preponderance of the evidence that it would have removed Berube absent charge two. The dissenting Board member would have held that the agency failed to prove by a preponderance of the evidence that it would have removed Berube absent charges two and five. To prevail under the standard of section 7701(c)(1)(B), the agency must prove by a preponderance of the evidence not that it *could* have, but that it *would* have removed Berube under section 7543 absent charges one, two, and five.

Nowhere in the Board's opinion does it address or apply this legal standard. Thus, we remand this case to the Board to determine, based on the existing record, whether the agency has proved by a preponderance

of the evidence that it would have removed Berube under section 7543 based solely on the sustained charges.

VACATED AND REMANDED

APPENDIX

[Charge 1] From October 1, 1982, to January 25, 1983, you were serving as Regional Administrator of the National Capital Region under the supervision of the Associate Administrator for Operations, Steven L. Hammer. Mr. Hammer frequently remonstrated with you concerning your specific failures to carry out or to delegate specific job assignments and objectives. You acknowledged your failures as being deliberate, insisting that you viewed your responsibilities as being not to administer the operations of the National Capital Region but to bring about policy changes for the entire agency. The disruptive effect of your manner and deliberate actions was to frustrate the will of your immediate supervisor in an insubordinate manner.

[Charge 2] On January 23, 1983, in Forth Worth, Texas, you endeavored to coerce me by stating that unless you were permitted to continue serving in the position of Regional Administrator for the National Capital Region you would "fight" and "go to the press." In response to my question as to whether if I left you in the Regional Administrator job you would not "fight" or "go to the press," you stated that was correct. This attempted coercion evidences a malicious attitude toward management and the agency by threatening to create an environment of sensationalism demeaning to the Government.

[Charge 3] From January 25, 1983, to May 25, 1983, you were detailed to an executive position as Acting Assistant Commissioner for Buildings Management under the supervision of the Commissioner, Public Buildings Service, Richard O. Haase. In this position, you were responsible for the development and administration of policies, regulations, methods, and procedures relating to the management, operation, and maintenance of public buildings and related real and personal property; the maintenance of excess GSA real property; the program administration for the alteration of Federal buildings; GSA safety and accident prevention, fire prevention, and administration for concession activities nationwide. Additionally, you were responsible for performing your duties in a way that would ensure agreement upon the objectives of the building management and related programs, promote smooth teamwork among the various components, and enhance the vitally needed understanding, acceptance, and participation in these programs. Instead of carrying out your assigned duties and responsibilities, you focused your time and energies, and much of the time and energies of your executive peers and superiors, on matters such as challenging the organization of the office and your position description. The manner in which you did this resulted in significant waste of valuable employee time, with a consequent serious adverse effect on the productivity of the office, thus impeding Government efficiency and economy. Mr. Haase and the other officials met with you frequently and remonstrated that you were being disruptive, which you acknowledged without apology.

[Charge 4] From May 25, 1983, to the present, you have been detailed to an assignment in the Office of Operations under the immediate supervision of the Deputy Associate Administrator, Robert J. DiLuchio. You were assigned the responsibility to develop a set of options to provide the agency with an improved resource allocation system for both dollars and people. Instead of making a good faith effort to provide a constructive contribution, you stated your inability to comply with instructions and, in fact, you failed to execute those instructions to the detriment of Government efficiency and economy.

[Charge 5] On August 1, 1983, in Washington, D.C., you, through your repre-

sentative, G. Jerry Shaw, attempted to coerce me into meeting certain conditions that you had proposed concerning yourself as follows:

(a) to retain your title as Regional Administrator for the National Capital Region, and

(b) to be detailed to one of four executive positions, namely Associate Administrator for Operations, Special Assistant to the Administrator, Deputy Commissioner for Public Buildings, or Assistant Commissioner for Buildings Management, and

(c) to receive a fully satisfactory performance rating, and

(d) to be given a letter of recommendation, preferably signed by me, to aid you in seeking employment outside the government, and

(e) to be reassigned outside the commuting area upon your obtaining employment outside the government so as to be eligible for an immediate annuity.

In exchange for my agreeing to these conditions, it was stated that you would "stay within the system" and not continue to wage a campaign against the agency in the news media. This attempted coercion showed that you were prepared to disrupt the agency's day-to-day operations to obtain your personal objective by impeding government efficiency and economy.