**Franklynn A. ELIAS, Petitioner,**

v.

**DEPARTMENT OF DEFENSE, Respondent.**

**No. 97–3165.**

United States Court of Appeals, Federal Circuit.

June 13, 1997.

---

Franklynn A. Elias, Pro se, of San Rafael, CA, submitted on brief.

Major Dana E. Morris, Attorney, United States Air Force, of Arlington, VA, submitted on brief, for respondent.

Before NEWMAN, PLAGER, and CLEVENGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Franklynn A. Elias appeals the decision of the Merit Systems Protection Board, Docket No. SE0831960037-I-1,[1] sustaining the Department of Defense's determination that Mr. Elias' request for law enforcement officer service credit was untimely filed. We reverse the decision of the Board and remand for determination of the merits of his claim.

## BACKGROUND

After more than thirty years of federal civil service, Mr. Elias retired from his position as a Labor–Management Reports Enforcement Officer with the Department of Labor on September 19, 1981. Mr. Elias had previously worked as a criminal investigator at the Air Force Office of Special Investigations (AFOSI). He learned in December 1992 that the Department of Labor had approved law enforcement officer service retirement credit for former colleagues, entitling them to an enhanced annuity. He filed an application for law enforcement officer service credit with the Department of Labor on January 12, 1993. The Department of Labor did not reject Mr. Elias' application as untimely.

On September 8, 1994 the Department of Labor told Mr. Elias that he could be entitled to law enforcement officer service credit if he established that he transferred from a primary or covered secondary law enforcement position[2] to his Department of Labor

1. *Elias v. Department of Defense*, 73 M.S.P.R. 52 (1997).

2. Law enforcement officer coverage can be either primary, for positions involving "[i]nvestigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States," or secondary, for positions "whose primary duties are as a first-level supervisor of law enforcement officers ... in primary positions." 5 C.F.R. § 831.902;

position without a break in service. Accordingly, on September 16, 1994 Mr. Elias requested a ruling from the Air Force that he was entitled to law enforcement officer coverage based on his service as a criminal investigator at Travis Air Force Base.

On June 28, 1995 the Department of the Air Force wrote to the Department of Defense personnel service, stating "We recommend approval of Mr. Elias' request ...," and also recommending waiver of the one-year application deadline established by 5 C.F.R. § 831.906(e) because Mr. Elias applied for coverage "at the first opportunity" after he become aware of his entitlement. The Department of Defense personnel service then refused to waive the application deadline, rejected the application as untimely filed, and did not review the merits of Mr. Elias' request and the Air Force's recommendation that the request be approved.

Mr. Elias appealed the denial to the MSPB. The administrative judge found that Mr. Elias was prevented by circumstances beyond his control from meeting the application deadline. The administrative judge found that before Mr. Elias' retirement no AFOSI positions were covered under the law enforcement provisions of 5 U.S.C. § 8336(c) and that Mr. Elias could not be presumed to have known when they became covered positions. The administrative judge also found that the Department of Defense was not prejudiced by Mr. Elias' delay in filing. Thus the administrative judge reversed the agency's decision.

The full Board reversed the decision of the administrative judge. The Board held that the decision was solely within the agency's discretion, and not subject to reversal by the Board unless the agency abused that discretion. Explaining that the "agency has reasonably asserted that it would face an 'inordinate burden' if it were required to attempt to reconstruct the actual duties of a position that the appellant has not occupied since 1960," the Board sustained the agency's ruling of untimeliness. This appeal followed.

see also id. §§ 831.903–.904 (prescribing conditions for primary and secondary law enforce-

## DISCUSSION

We review a Board decision to determine whether it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c).

### A

The agency argues that the Board had no jurisdiction to review the agency's decision at all, citing 5 C.F.R. §§ 831.906(e) and (f). 5 C.F.R. § 831.906 contains regulations for law enforcement officer service credit under 5 U.S.C. § 8336(c). Subsections (e) and (f) provide:

(e) Coverage in a position or credit for past service will not be granted for a period greater than 1 year prior to the date that the request from an individual is received under paragraphs (b), (c), or (d) of this section by the employing agency, the agency where past service was performed, or OPM.

(f) An agency head ... may extend the time limit for filing, when in the judgment of such agency head or OPM, the individual shows that he or she was prevented by circumstances beyond his or her control from making the request within the time limit.

The agency's position is that the permissive language in subsection (f), that the "agency head ... *may* extend the time limit for filing," means that a decision as to timeliness is "vested solely" with the agency head and is not subject to the review procedures of the Civil Service Reform Act and the Merit Systems Protection Board. This position is not correct.

■ The Board correctly held that the agency's decision concerning law enforcement officer service credit is appealable under the CSRA and is within the Board's jurisdiction. 5 C.F.R. § 831.910, titled "Review of decisions," provides:

ment officer coverage).

The following decisions may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board:

(a) The final decision of an agency head or OPM issued to an employee, former employee, or survivor as the result of a request for determination filed under § 831.906....

The Board's jurisdiction is not limited to decisions on entitlement to service credit, but also includes decisions concerning timeliness of an employee's application, *viz.* the one-year period, § 831.906(e), and its extension based on "circumstances beyond his or her control," § 831.906(f).

### B

■ Mr. Elias contends that he was prevented by circumstances beyond his control from requesting law enforcement officer service credit within the regulatory time limit, thus meeting the criterion for waiver found in 5 C.F.R. § 831.906(f). The full Board held that although the agency's decisions of waiver are reviewable, the Administrative Procedure Act (APA) standard of review applies to the Board's review of agency action. The Board reasoned that on appeal of an agency action the Board "stand[s] in a position analogous to that of a reviewing court." That is incorrect. The Board is not "a reviewing court." The system of federal employment appeals under the CSRA is premised on the statutory procedure whereby the employee is entitled to full trial before an administrative judge of the Board, whereby the Board generates a record and reaches a decision based on its factual findings and fresh application of correct law to these facts. *See* 5 U.S.C. § 7701(a) ("An appellant shall have the right—(1) to a hearing for which a transcript will be kept; ...."); *Baker v. Department of Health and Human Servs.*, 912 F.2d 1448, 1456 (Fed.Cir.1990):

Even though the employee is the initiating party, the agency is required to establish its case to the Board by a preponderance of the evidence. [5 U.S.C.] § 7701(c). Under this standard, the 'appeal' requires a *de novo* determination of the facts.

Thus statute and precedent require *de novo* proceedings before the Board on the substance of the employee's claim. The agency decision on substantive matters, to be sustained, must be proved by a preponderance of the evidence before the Board. 5 U.S.C. § 7701(c)(1)(B); *Berube v. General Services Admin.*, 820 F.2d 396, 400 (Fed.Cir.1987).

In *Carducci v. Regan*, 714 F.2d 171 (D.C.Cir.1983) the court explained that personnel actions within the remedial scheme of the CSRA are not subject to review under the standard of the APA. Although there are indeed areas, in the complexities of federal employment practices, wherein an agency's views may receive weight appropriate to its role in administering a particular rule, *see Azarkhish v. Office of Personnel Management*, 915 F.2d 675, 678 (Fed.Cir.1990) (petitioner challenging the Office of Personnel Management's failure to extend the time limit for filing a request for reconsideration must show that the Office abused its discretion), the general statutory scheme of the CSRA is premised on the objectivity and nation-wide consistency of the Board as a centralized overseer of federal employment law. For example, in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280, 298–99 (1981), the MSPB pointed out that its authority to review and mitigate a penalty that the agency had imposed is broader than a court's authority to review and mitigate a penalty that the MSPB has imposed.

Thus the Board erred in subordinating its own findings to those of the agency. The Board had properly conducted a *de novo* determination of the facts; it was the administrative judge's findings that were before the full Board for review.

### C

The administrative judge held that Mr. Elias could not be denied pension rights to which he was entitled, because he had shown that he "was prevented by circumstances beyond his control from meeting the June 5, 1961 one-year deadline." The full Board reversed on the ground that the agency deemed it to be an "inordinate burden" to reconstruct Mr. Elias' duties. We take note that the records of those duties were apparently fully available (some of the early rec-

ords are in the appendix filed with this court), and that the Air Force had already verified the facts of Mr. Elias' service and recommended entitlement.

Mr. Elias points out that at the time of his retirement, in 1981, AFOSI positions had not been classified as law enforcement service. When AFOSI positions were so classified in 1986, the particular positions Mr. Elias held in AFOSI in 1961 were not listed because those positions no longer existed. This was the situation in which the Air Force, as his direct employer, reviewed the duties of these positions and determined that they met the criteria of law enforcement officer positions.

Mr. Elias requested law enforcement officer service credit promptly after he learned that he became entitled to such credit. He bore the burden of establishing entitlement, see 5 C.F.R. § 831.906(a) ("An employee who requests credit for service under 5 U.S.C. 8336(c) bears the burden of proof with respect to that service...."). He met that burden when the Air Force agreed that his request was meritorious and recommended to Department of Defense personnel staff that it be approved.

The Department of Defense did not reject the recommendation on substantive grounds, but simply on the ground that the Department of Defense "found no basis to waive the filing time limit." The agency points out that Mr. Elias had a window of opportunity in 1989 when, under newly enacted provisions and classification, Mr. Elias' request for law enforcement officer credit would not have been untimely. However, Mr. Elias was not so notified and, as we have observed, his past positions were not specifically designated because they no longer existed. We observe that the burden on the agency to review the 1961 records was not much less in September 1989 than in January 1993 when Mr. Elias first filed this request; these were perhaps "old" records, but they were not unavailable.

■ Pension rights are established by statute, and are a matter of entitlement, not agency discretion. They can not be disposed of on the ground that it is too burdensome to check the records of an employee's service. Cf. Muwwakkil v. Office of Personnel Management, 18 F.3d 921, 925 (Fed.Cir.1994) (agency is obligated to check personnel records to verify responses on application for refund of retirement deductions). The administrative judge, observing that the requisite information was available and that the Air Force had concluded that Mr. Elias was entitled to the requested service credit, correctly rejected the agency's position that the question of timeliness was not reviewable by the Board, and then reversed the agency's decision that the application was untimely.

■ Since it was not disputed that Mr. Elias had never been notified of this entitlement and that he filed within days of learning of it, Mr. Elias met the regulatory criterion of showing that the circumstances of his delay were beyond his control.

The MSPB's decision, sustaining the agency's refusal to waive the late filing, is reversed. Since the Board did not reach the merits of Mr. Elias' entitlement vel non, we remand for determination of this issue.

*REVERSED AND REMANDED.*